FILED

2020 Jul-06  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JENINE LATHAM, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  2:18-CV-01326-RDP** |
| | } | |
| CITY OF BIRMINGHAM, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Jenine Latham filed this lawsuit against Defendant City of Birmingham. She claims the City violated Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, and alleges she has suffered gender discrimination, retaliation, and a hostile work environment. (Doc. # 8).

This case is before the court on Defendant's Motion for Summary Judgment. (Doc. # 29). The Motion has been fully briefed (Docs. # 30, 32, 33) and is ripe for review. After careful review, and for the reasons explained below, Defendant's Motion for Summary Judgment (Doc. # 29) is due to be granted.

## I.    Background[1]

Plaintiff works for the City as a police officer and began her employment in 2002. (Doc. # 31-1 at 15, 88).[2] Between 2002 and 2013, she worked as a patrol officer in the West Precinct. (Doc.

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] When the court cites to a specific deposition page number, the page number corresponds to the deposition page number. With respect to any other document, the court cites to the court-filed page number.

# 31-1 at 16). At all relevant times, Plaintiff's direct supervisors were Sergeant Tim McCord and Sergeant Dwayne Howard, and her commanding officers were Captain James Blanton and Lieutenant James Jackson. (Doc. # 31-1 at 16-17). Plaintiff complains about the conduct of McCord and Jackson.

### 1. Sergeant McCord

Plaintiff testified that McCord was sarcastic, demeaning, and loud, and that he would refer any questions she asked to other employees instead of answering them directly. (Doc. # 31-1 at 28-30). Plaintiff also testified that McCord was "ignorant" and does not "know how to talk to people." (Doc. # 31-1 at 29-20). McCord acknowledges that he is loud and direct when communicating with inferior officers, but contends that he "does not mean to demean or belittle anyone." (Doc. # 31-1 at 43). Other officers have stated that McCord is a big "cut-up" (that is, he "jokes a lot") and "talks very loud," which can be perceived as demeaning, but that it is not what he intends.[3] (Doc. # 31-1 at 40-41).

### 2. Lieutenant Jackson

Plaintiff asserts that Jackson sexually harassed her. (Doc. # 31-1 at 17, 37). Specifically, Plaintiff testified that on a particular night in September 2013, she came to work and was standing at the counter. (Doc. # 31-1 at 18). While she was looking at the patrol list for her shift, Jackson came up behind her, spoke a few words, and started "rubbing the lower area of [her] elbow and …

---

[3] Plaintiff also alleged in her Amended Complaint that she was issued a letter of counseling by McCord in September 2013. Plaintiff was supposed to work the "early car" shift. (Doc. # 31-1 at 39). She went into work that day, but she was not scheduled. (Doc. # 31-1 at 39). On another occasion, Plaintiff was unaware she was on the "early car" shift, so she did not show up for work. (Doc. # 31-1 at 39). Consequently, on September 26, 2013, McCord issued Plaintiff a letter of counseling for having three unexcused absences within a twelve-month period (for missing "early car" shifts). Jackson upheld this counseling because Plaintiff was aware she had to work the "early car" shift, but came in late. (Doc. # 31-1 at 43). This letter of counseling was not included in Plaintiff's disciplinary file. (Doc. # 31-1 at 88-89). Plaintiff testified that after she received the letter of counseling, McCord took her off the "early car" shift. McCord told Internal Affairs that Plaintiff "has not worked the [e]arly [c]ar [shift] since he gave her a late slip[] because she has not signed up to work it." (Doc. # 31-1 at 43). McCord also told Internal Affairs that no one had tried to block Plaintiff from working the "early car" shift. (Doc. # 31-1 at 43).

arm." (Doc. # 31-1 at 18-19). Plaintiff then moved over, and after doing so, Jackson "leaned in and asked how [she] was doing," to which she responded, "I'm fine." (Doc. # 31-1 at 19). Another incident between Plaintiff and Jackson took place in September or October 2013. Plaintiff testified that one morning, while she was waiting for orders, Jackson "walk[ed] up behind [her] to the side of [her] . . . put[] his body close up to [her] . . . [and] press[ed] up against [her], and he [asked] . . . , "[h]ow you doing?" (Doc. # 31-1 at 19-20). Plaintiff also testified that, while on duty, Jackson would ask her personal, inappropriate questions about her children, her relationship status with the father of her children, and whether she worked out. (Doc. # 31-1 at 20-21). Jackson told Internal Affairs during its investigation that he has "never touched [Plaintiff] on her elbow and [that] [Plaintiff] has never been that close . . . for him to console her." (Doc. # 31-1 at 44). Plaintiff testified that she was not aware of Jackson acting inappropriately with any other female officer. (Doc. # 31-1 at 48-49).

### 3. Plaintiff's Claim of Disparate Treatment, the Internal Affairs Investigation, and Her Other Interactions with Sergeant McCord

In December 2013, Plaintiff was on "limited duty," and she was working the front desk. (Doc. # 8 at 14, ¶ 87; Doc. # 31-1 at 61). Under Defendant's policies, "[l]imited duty is an alternative temporary assignment within an employee's current job classification . . . while recovering from a job related injury . . . or medical condition. . . ." (Doc. # 31-1 at 76). While on limited duty, Plaintiff requested to work overtime, but her request was denied. (Doc. # 31-1 at 82). According to Plaintiff, employees are not permitted to work overtime while on limited duty. (Doc. # 31-1 at 82-83). However, Plaintiff testified that Officer Anquetta Merchant, who she claims was also on limited duty, was permitted to work overtime. (Doc. # 31-1 at 82-83).

In December 2013, Plaintiff complained to Captain Blanton about sexual harassment and a hostile work environment and named McCord and Jackson in that complaint. (Doc. # 31-1 at 38,

50). On December 13, 2013, Blanton forwarded Plaintiff's complaints to Internal Affairs. (Doc. # 31-1 at 26, 50). Plaintiff testified that during the investigation, Sergeant Cynthia Morrow (of Internal Affairs) called Plaintiff into her office and stated to Plaintiff, "why don't you just come to work and do your job." (Doc. # 31-1 at 56).

On December 30, 2013, Plaintiff clocked in and began her shift; however, soon after she started working, she began feeling sick. (Doc. # 31-1 at 37). Sometime after midnight, she contacted Sergeant Howard who told her to clock out and go home and to tell McCord to fix her time once she returned. (Doc. # 31-1 at 39-40). Plaintiff did not show up for work the next day due to illness from a gynecological disorder. (Doc. # 31-1 at 40, 105). Howard called Plaintiff and asked her where she was. Plaintiff stated that she was off because of the holiday. (Doc. # 31-1 at 43). Howard informed Plaintiff that she was scheduled to work. (Doc. # 31-1 at 43). Plaintiff then told Howard that she was sick anyway and could not come in. Howard responded that she should bring a doctor's note when she returned to work. (Doc. # 31-1 at 43).[4] Plaintiff testified that when she returned to work, McCord had changed her timecard to absent without leave ("AWOL"). (Doc. # 31-1 at 44). Plaintiff inquired about this change with Howard and Blanton, but they were unaware of the change. Ultimately, however, once Plaintiff gave Howard her doctor's excuse, her timecard was changed to "sick" instead of AWOL. (Doc. # 31-1 at 46).

In January 2014, Plaintiff transferred districts within the West Precinct and with that change she no longer reported directly to McCord. (Doc. # 31-1 at 94). Howard became Plaintiff's direct supervisor. (Doc. # 31-1 at 94).

Early in 2014, Plaintiff was in the field when she began menstruating. (Doc. # 31-1 at 30-

---

[4] Defendant's policies provide that "[a] Commanding or Superior Officer may require a doctor's certificate or other written evidence to substantiate the need for sick leave." (Doc. # 31-1 at 78).

31). She testified that although she was told (along with her coworkers) to not go back to the Precinct "for any reason,"[5] she needed to use the restroom, so she went back to the Precinct. (Doc. # 31-1 at 31). When she arrived, McCord stopped her and told her she was not supposed to be there. (Doc. # 31-1 at 31-32). Upon informing McCord of the situation, he told her to park her car and go home. (Doc. # 31-1 at 32-33). McCord disputes these events. He informed Internal Affairs during its investigation that Plaintiff had called him and "told him she had soiled (urinated) her clothes and needed to go home." (Doc. # 31-1 at 43). He stated that Plaintiff "never mentioned anything about coming to the Precinct, only that she needed to go home." (Doc. # 31-1 at 43). McCord told her that because it was already so late in her shift to just go home. (Doc. # 31-1 at 43). McCord contends he saw Plaintiff at the Precinct later that day and he said "that the Lieutenant told her she could go home." (Doc. # 31-1 at 43). In any event, Plaintiff did not suffer any disciplinary action related to these events. (Doc. # 31-1 at 33-34). And, Plaintiff testified that McCord did not make any gender-related statements during their interaction. (Doc. # 31-1 at 33).

On January 22, 2014, Sergeant Morrow (with Internal Affairs) rendered her decision on Plaintiff's internal complaints about McCord and Jackson. Morrow found that Plaintiff's claims of sexual harassment and hostile work environment were unfounded. (Doc. # 31-1 at 45). But, Morrow recommended that McCord receive supplemental supervisory training "that [would] allow him to strengthen his communication skills and his delivery methods to his subordinates." (Doc. # 31-1 at 45).

In late January or early February 2014, Plaintiff submitted a request to work an "extra job"

---

[5] Plaintiff testified later in her deposition that officers were told not to go back to the Precinct "unless you've got a report," and they were also told to just not "hang around." (Doc. # 31-1 at 111). Other officers in the West Precinct, such as Officers Gregory Edge, Steven Oglesby, and Stephen Farr, told Internal Affairs that they had never been told to not return to the Precinct for legitimate reasons, such as to turn in reports or to use the restroom. (Doc. # 31-1 at 40). Jackson told Internal Affairs that officers are free to come to the Precinct during their shift, so long as they notify the dispatcher of their location. (Doc. # 31-1 at 44).

on February 4, 2014 at Worship Center Church. (Doc. # 31-1 at 69-70). Plaintiff had previously worked this extra job many times and experienced "no problem[s]" receiving permission to do so. (Doc. # 31-1 at 79-80). The event was cancelled so she did not work the extra job. (Doc. # 31-1 at 70). Howard initiated an investigation into this request at Jackson's direction because Jackson was concerned that Plaintiff had worked the event without permission. (Doc. # 31-1 at 69-72). During the pendency of this investigation, Plaintiff was not allowed to work any extra jobs. (Doc. # 31-1 at 73). After the investigation concluded, Plaintiff was again eligible to work the extra job at Worship Center Church. (Doc. # 31-1 at 81).

### 4.  Letters of Counseling

On February 6, 2014, Plaintiff was issued a letter of counseling (and was also verbally counseled) for not calling in when she was sick. (Doc. # 31-1 at 81). Plaintiff testified that around this time, she was experiencing numerous bouts of illness and, as a result, was taking medication that made her very tired. (Doc. # 31-1 at 91). Defendant's sick leave policy requires that an employee call in 15 minutes before a scheduled shift to notify the supervisor; however, because of the medication, Plaintiff testified that she often overslept and did not call in. (Doc. # 31-1 at 78, 91). Regardless, as before, this letter of counseling was not included in Plaintiff's disciplinary file. (Doc. # 31-1 at 88-89).

On February 20, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Office ("EEOC"), alleging gender discrimination and retaliation. (Doc. # 31-1 at 46, 54).

At some point after she filed her EEOC Charge, Plaintiff was driving her patrol car to the Precinct, and upon parking her car in a certain spot, Howard and a Lieutenant told her that she could not park there. (Doc. # 31-1 at 108-09). Plaintiff moved the patrol car to another parking

spot. (Doc. # 31-1 at 109). However, another female officer had pulled into the Precinct to park her patrol car very close to the spot Plaintiff was just told she had to move her car. (*Id.*). Plaintiff contends that Howard saw the other female officer had parked in that spot, but he did not ask the other female officer to move her car. (*Id.*).

On March 20, 2014, Plaintiff was issued a letter of counseling for failing to answer her radio after the dispatcher called her three times. (Doc. # 31-1 at 82). Plaintiff remarked on the letter that the radio was busy on two of the three occasions the dispatcher tried to call. (Doc. # 31-1 at 82). She says that she explained this to Howard and "[they] moved on." (Doc. # 31-1 at 82). Once again, the letter of counseling was not included in Plaintiff's disciplinary file. (Doc. # 31-1 at 104).

On August 28, 2014, Plaintiff was issued a letter of censure for failing to answer her radio after the dispatcher called her three times. (Doc. # 31-1 at 83). Plaintiff remarked on the letter: "I'll be glad to get out of Babylon!! I do my job & was doing my job. Just did not hear the dispatcher." (Doc. # 31-1 at 83).

On May 18, 2018, the EEOC issued Plaintiff a Notice of Right to Sue. (Doc. # 8 at 23). Plaintiff received this Notice on May 21, 2018. (Doc. # 8 at 3, ¶ 13). On August 17, 2018, Plaintiff filed her initial Complaint. (Doc. # 1). On November 9, 2018, she filed an Amended Complaint. (Doc. # 8).

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## III.   Discussion

Plaintiff advances three claims in her Amended Complaint: (1) gender discrimination in violation of Title VII and Section 1981 (Count One), (2) retaliation in violation of Title VII (Count Two); and (3) hostile work environment in violation of Title VII (Count Three). After careful review, the court concludes that Defendant's Motion for Summary Judgment (Doc. # 29) is due to be granted.

### A.  Plaintiff's Gender-Based Disparate Treatment Claim

Plaintiff claims that Defendant discriminated against her because of her gender. Specifically, Plaintiff claims that: (1) McCord had a "rude and hostile" demeanor toward her; (2) McCord denied her the right to use sick time due to a gynecological disorder; (3) McCord had a

"a pattern and practice of illegally altering her timecard;" (4) her extra job requests were denied; (5) her overtime request was not approved because she was on "limited duty;" (6) she was issued a letter of counseling for not calling in 15 minutes prior to her shift; (7) she was issued a letter of counseling for working an extra job without approval; (8) she was issued a letter of counseling on two different occasions for failing to answer the police radio in a timely manner; (9) she was required to bring a doctor's excuse for an absence; and (10) she was required to move a patrol car to a different parking area at the Precinct when other female officers were not required to do so. (*See generally* Doc. # 8).

### 1. Plaintiff's Gender-Based Section 1981 Claim Fails as a Matter of Law

Plaintiff's Section 1981 gender discrimination claim fails as a matter of law. The court agrees. "Only claims of race discrimination, and not claims of gender discrimination, are cognizable under § 1981." *Rollins v. Alabama Cmty. Coll. Sys.*, 814 F. Supp. 2d 1250, 1267 (M.D. Ala. 2011) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)); *see Bonham v. Wal-Mart, Inc.*, 2018 WL 4912633 (N.D. Ala. Oct. 10, 2018) ("[G]ender discrimination is not cognizable under Section 1981."). Thus, Plaintiff's claim of gender discrimination under Section 1981 is due to be dismissed.

### 2. Plaintiff Has Failed to Exhaust Her Administrative Prerequisites with Respect to Acts Occurring After She Filed Her February 20, 2014 EEOC Charge

Plaintiff filed her one and only EEOC Charge on February 20, 2014. (Doc. # 8 at 21). To challenge as discriminatory any of Defendant's actions after February 20, 2014, Plaintiff was required to file a second or supplemental EEOC Charge. She did not do so.

The Supreme Court has held "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180 [] day time period

after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). To be sure, "allegations of new acts of discrimination that are offered as the essential basis for judicial review must . . . be presented to the [EEOC]. . . . Discrete acts of discrimination that occur after an administrative filing must first be administratively reviewed before a plaintiff may obtain judicial review of those same acts." *Caetio v. Spirit Coach, LLC*, 992 F. Supp. 2d 1199, 1210 (N.D. Ala. 2014) (quoting *Basel v. Secretary of Defense,* 507 F. App'x 873, 876 (11th Cir. 2013)) (internal quotation marks omitted). *See also Bennett v. Chatham Cty. Sheriff Dep't*, 315 F. App'x 152, 161 (11th Cir. 2008) (acknowledging the well-established principle that "discrete discriminatory acts are not actionable if time barred" by denying the plaintiff's discrimination claims relating to two failure-to-promote instances that fell outside of the 180-day period); *Shaw v. Mobile Cty. Pub. Sch. Sys.*, 84 F. Supp. 3d 1303, 1311 (S.D. Ala. 2015) ("Each incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'") (quotation omitted).

Therefore, Plaintiff's gender-based claims regarding discrete events occurring after her February EEOC Charge (*i.e.*, having to move her parked car from a restricted spot while another female officer was allowed to park in a similar spot, the receipt of the March 20, 2014 letter of counseling, and the receipt of the August 28, 2014 letter of censure) are not actionable due to her failure to exhaust her administrative prerequisites as to these claims.[6]

---

[6] The court notes that even if the gender-based claims regarding these events were not procedurally barred, they would still fail on the merits. Not only do these events fail to qualify as adverse employment actions, but Plaintiff has not alleged how she was treated less favorably than someone outside of her protected class. For example, one of Plaintiff's claims (*i.e.*, that she had to move her parked car) rests on the allegation that a female officer (that is, someone within her protected class) was treated more favorably than her. As discussed in more detail below, this plainly cuts against Plaintiff's gender discrimination claim.

### 3. Plaintiff Has Failed to Establish a *Prima Facie* Case of Gender-Based Disparate Treatment Under Title VII

Absent direct evidence of discrimination (and, to be clear, there is none alleged here), employment discrimination claims historically have been evaluated under the burden-shifting framework developed by the Supreme Court in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff may satisfy her initial burden of establishing a *prima facie* case by presenting evidence that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). If a plaintiff makes such a showing, a burden of articulation shifts to the defendant. That is, it must articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). If the employer satisfies its "exceedingly light" burden of articulating a legitimate, non-discriminatory reason for its decision, the burden shifts back to the plaintiff to offer substantial evidence from which a reasonable jury could find that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994); *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141-42 (11th Cir. 1983). If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it "head on and rebut it." *Chapman*, 229 F.3d at 1030.

Here, Defendant concedes that Plaintiff is a member of a protected class (female) and that she is qualified for the position; however, Defendant contends that Plaintiff cannot establish the third and fourth elements of her *prima facie* case. Thus, whether Plaintiff has established a *prima*

*facie* case depends upon whether she has presented evidence that she suffered an actionable adverse employment action and that a similarly situated employee outside of her protected class was treated more favorably than her. *See Maynard*, 342 F.3d at 1289.

### a. Plaintiff Has Failed to Establish that She Suffered an Adverse Employment Action

"Under the third element of the *prima facie* case, for conduct to qualify as an adverse employment action, the conduct must, in some substantial way, alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive . . . her of employment opportunities, or adversely affect [ ] . . . her status as an employee." *Powell v. Nat'l Labor Relations Bd.*, 2019 WL 4572915, *4 (N.D. Ala. Sept. 20, 2019) (quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)) (internal quotation marks omitted). "To determine whether an employment action is 'adverse,' courts use an objective test: whether a reasonable person in the plaintiff's position would consider the employment action materially adverse." *James v. City of Montgomery*, 2019 WL 3346530, *7 (M.D. Ala. July 25, 2019); *see Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000), *overruled on other grounds by Cheatham v. Dekalb Cty., Ga.*, 682 F. App'x 881 (11th Cir. 2017) ("Whether an action is sufficient to constitute an adverse employment action . . . must be determined on a case-by-case basis.").

Plaintiff contends that the following actions were discriminatory[7]: the letters of counseling she received; the denial of the opportunity to work overtime while on limited duty; and the denial of the opportunity to use the restroom at the Precinct while menstruating.[8] The court concludes

---

[7] Plaintiff's claim of sexual harassment will be discussed separately, and in more depth, below.

[8] The court notes that, at least as related to her gender claim, Plaintiff only references these actions in passing in her opposition brief. As explained more fully below, she has failed to show how any of these actions materially affected the terms and conditions of her employment so as to rise to the level of an adverse employment action. With respect to the other events she claims were discriminatory -- *i.e.*, McCord's "rude and hostile" demeanor toward her, McCord denying her the right to use sick time due to a gynecological disorder, McCord's "pattern and practice of illegally altering her timecard," having her extra job requests denied, being required to bring a doctors excuse for an

that Plaintiff has failed to establish that any of these complained-of events constituted an actionable adverse employment action.

### 1.      Letters of Counseling

On September 13, 2013, Plaintiff received a letter of counseling for having three unexcused absences within a twelve-month period (for missing the "early car" shift). (Doc. # 31-1 at 39, 80). On February 6, 2014, she was issued another letter of counseling for "not calling in when [she] found that [she] would be home sick." (Doc. # 31-1 at 81). Neither of these letters was placed in Plaintiff's disciplinary file. (Doc. # 31-1 at 88-89).

The Eleventh Circuit has recognized that "memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions." *Martinez v. City of Birmingham*, 2019 WL 398686, *5 (N.D. Ala. Jan. 31, 2019) (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1236 (11th Cir. 2001), *overruled on other grounds by Minnifield v. City of Birmingham Dep't of Police*, 791 F. App'x 86 (11th Cir. 2019)). Because there is no Rule 56 evidence indicating that the terms, conditions, or privileges of Plaintiff's employment were materially altered or affected as a result of these counseling letters, the court concludes that they do not constitute actionable adverse employment actions.

---

absence, and being required to move a patrol car to a different parking area at the Precinct when other female officers were not required to do so -- Plaintiff has not presented any argument that these events constitute actionable adverse employment actions that "materially" affected or altered the terms, conditions, or privileges of her employment. Therefore, she has abandoned any disparate treatment claim based on these events. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (upholding dismissal of undefended claims on summary judgment); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."). Therefore, the court need not address these events.

2.        **Denial of the Opportunity to Work Overtime and Extra Jobs**

Plaintiff asserts that while she was working limited duty at the front desk (1) she was denied the opportunity to work overtime but (2) Officer Anquetta Merchant, who was also on limited duty, was allowed to work overtime. (Doc. # 31-1 at 82-83). Plaintiff also complains that her request to work an extra job at Worship Center Church was denied. (Doc. # 31-1 at 69-70).

The Eleventh Circuit has held that "[b]ecause overtime and comp time opportunities affect[] compensation, a denial of such opportunities *could* constitute an adverse action." *Hall v. Dekalb Cty. Gov't*, 503 F. App'x 781, 788 (11th Cir. 2013) (emphasis added) (citation omitted). Notwithstanding, "an adverse employment action will only be found where an employee is deprived of compensation which she otherwise would have been entitled to or earned." *Scotton v. Nicholson*, 2006 WL 8429880, *15 (M.D. Fla. Mar. 22, 2006) (citing *Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001), *overruled on other grounds by Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011)).

Here, the denial of overtime on one occasion does not constitute an actionable adverse employment action. First, Plaintiff has failed to present Rule 56 evidence demonstrating that she was entitled to work overtime. Defendant's policy on overtime states that "the Department is unable to pay for overtime worked except under emergency operational conditions." (Doc. # 31-1 at 64). Second, although the Rule 56 record is unclear as to whether an employee on limited duty is permitted to work overtime, Plaintiff testified that overtime is not available to employees on "limited duty." (Doc. # 31-1 at 83). And finally, Plaintiff was on limited duty for only a week or two, and there is no Rule 56 evidence that she was ever denied overtime opportunities apart from this one instance while on limited duty. (Doc. # 31-1 at 82). *See Hall*, 503 F. App'x at 785 (holding that the "occasional denial of . . . overtime," when an employee consistently earned overtime while

15

employed, was not a material adverse employment action).

Neither does the brief denial of the ability to work an "extra job" while Jackson performed an internal investigation into Plaintiff's history of working extra jobs qualify as an actionable adverse employment action. Plaintiff had worked an extra job at Worship Center Church before her internal complaints to Blanton, and she testified that she was able to work an extra job at that same establishment after Howard and Jackson concluded their investigation. There is no Rule 56 evidence showing that Plaintiff was reprimanded or received any disciplinary action as a result of the investigation. Therefore, just as an occasional denial of overtime does not amount to an adverse employment action, neither does a temporary inability to work an outside job (particularly where, as here, that inability is tied to an internal investigation).

Thus, the court concludes that neither of these instances constitutes an actionable adverse employment action.

### 3.      Use of the Precinct Restroom

With respect to the restroom incident in early 2014 -- where Plaintiff went back to the Precinct to use the bathroom, but McCord would not let her use it, and told her to go home (Doc. # 31-1 at 31-33) -- Plaintiff received no discipline as a result of this one, isolated event. There is no Rule 56 evidence indicating that Plaintiff's compensation was altered or the terms, conditions, or privileges of her employment were materially affected in any manner. Thus, Plaintiff has not established that this incident constitutes an actionable adverse employment action.

Viewing the facts in the light most favorable to Plaintiff, she has failed to show that any of the challenged actions constitutes an actionable adverse employment action. Therefore, she has failed to establish the third element of her *prima facie* case.

### b. Plaintiff Failed to Present Any Evidence of Discriminatory Motive, Including Any Comparator Evidence to Support Her Claims

Even if Plaintiff could show that she suffered an actionable adverse employment action with respect to these events (and, to be clear, she cannot), she has failed to present any Rule 56 evidence that her gender was the reason for Defendant's treatment of her. And, in particular, she has not pointed to a similarly-situated employee outside her protected class (*i.e.*, a male) who was treated more favorably than she was.

An employee identified as a comparator by a Title VII plaintiff must be "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1226 (11th Cir. 2019). The Eleventh Circuit has clarified how one can meet this standard: a plaintiff must establish that the comparator (1) "engaged in the same basic conduct (or misconduct) as the plaintiff;" (2) was "subject to the same employment policy, guidelines, or rule as the plaintiff;" (3) was "ordinarily (although not invariably) . . . under the jurisdiction of the same supervisor as the plaintiff;" and (4) "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227-28. "A valid comparison will turn not on formal labels, but rather on substantive likenesses. . . . [A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (2015)). "Whether a comparator is similar in 'all material respects' is determined on a case-by-case basis, considering the individual circumstances in each case." *Id.* at 1224.

Here, in opposition to Defendant's Motion for Summary Judgment, Plaintiff has not even attempted to identify a similarly-situated comparator. Although Plaintiff made conclusory allegations in her Amended Complaint that certain male officers were treated more favorably (Doc. # 8 at 5, 7, ¶¶ 23, 36, 40, 42), there is no Rule 56 evidence to support any such allegation. Moreover, when presented with this question: "[c]an you think of anyone else [other than female Officer

Merchant] who specifically was in the exact same position of you for any of your claims who was treated in a different manner," Plaintiff responded: "[n]o, not that I know of." (Doc. # 31-1 at 135). The only "comparator evidence" Plaintiff has pointed to involves Officer Anquetta Merchant, who is also a female. According to Plaintiff, Officer Merchant was permitted to work overtime while on limited duty while Plaintiff was not. While this Rule 56 evidence might be significant if Officer Merchant was a male, she is not. Moreover, although procedurally barred, the court notes that Plaintiff's complaint about an instance when she was told to move her car from a parking spot does not suggest gender discrimination because, to support her claim, she points to another female officer as her "comparator." This evidence actually cuts against Plaintiff's gender discrimination claim.

Because Plaintiff has failed to show that a similarly-situated individual outside of her protected class was treated more favorably, she has failed to establish the fourth element of her *prima facie* case of gender discrimination. Even viewing the entirety of the Rule 56 record in the light most favorable to Plaintiff, the court concludes that Plaintiff has failed to put forth substantial evidence establishing a *prima facie* case of gender discrimination. There is simply no evidence that would permit a reasonable juror to infer that Plaintiff was discriminated against because of her gender.

### 4. Defendant Has Articulated Legitimate, Non-Discriminatory Reasons for Its Actions, and Plaintiff Has Failed to Show that Such Reasons are Pretext for Discrimination

Plaintiff's failure to establish two elements of her *prima facie* case of gender-based disparate treatment necessarily means that her claim of discrimination fails as a matter of law. However, even if Plaintiff had established a *prima facie* case, Defendant has met its exceedingly light burden of articulating legitimate, non-discriminatory reasons for its actions. So, the question

becomes whether Plaintiff can show that Defendant's reasons are a pretext for discrimination. She cannot.

With respect to the Precinct restroom issue, Plaintiff testified that McCord refused to let her inside and told her to go home. (Doc. # 31-1 at 32-33). McCord disputes these events. McCord informed Internal Affairs during its investigation that Plaintiff had called him and told him she had needed to go home. (Doc. # 31-1 at 43). He stated that Plaintiff "never mentioned anything about coming to the Precinct, only that she needed to go home." (Doc. # 31-1 at 43). McCord told her that because it was already so late in her shift to just go home and stay. (Doc. # 31-1 at 43). Nevertheless, for Rule 56 purposes, the court credits Plaintiff's account of her interaction with McCord.

The Rule 56 record shows that officers are free to come to the Precinct during their shift, so long as they (1) do not "hang around," and (2) notify the dispatcher of their location. (Doc. # 31-1 at 44). Therefore, the undisputed Rule 56 evidence clearly contradicts Plaintiff's contention, and the court concludes that Defendant has plainly shown that Plaintiff was permitted to go to the Precinct, so long as she notified the dispatcher. But, even if Plaintiff were treated in a manner inconsistent with that policy, she has not shown that was because of her gender.

With respect to the letters of counseling, they were issued to Plaintiff because she violated department policy on two occasions. And, the Rule 56 evidence shows Defendant issued her these letters pursuant to its common practices.

Finally, with respect to the denial of overtime and working an extra job, Defendant's policy explicitly limits overtime opportunities, and Plaintiff has not presented any evidence that she was entitled to work overtime while on limited duty. Further, to the extent Plaintiff was *briefly* denied the opportunity to work an extra job because Defendant was conducting an internal investigation

surrounding her previous extra job requests, she has not shown that decision was in any way based on her gender.

The reasons articulated for all of Defendant's actions are legitimate, and it is not for the court to second-guess the wisdom of those decisions. *See Flowers v. Troup Cty, Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)) ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments."). Because Defendant has articulated non-discriminatory reasons for its decisions, the burden falls on Plaintiff to show those reasons are a pretext for gender discrimination. Plaintiff has fallen far short of making that showing. As such, the court concludes that Defendant is entitled to summary judgment on Plaintiffs claim of gender-based disparate treatment.

### B.  Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation Under Title VII

Plaintiff claims that Defendant retaliated against her after she complained to Blanton regarding McCord and Jackson, and after she filed her EEOC Charge.[9] Specifically, Plaintiff alleges that Defendant: (1) changed her sick leave to AWOL on her timecard; (2) issued her letters of counseling; (3) subjected her to an Internal Affairs investigation into her working extra jobs; and (4) denied her requests to work extra jobs.

Title VII makes it unlawful for an employer to discriminate against an employee "because [s]he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding . . . ." 42

---

[9] Defendant contends that, because Plaintiff failed to file a supplemental or successive EEOC Charge, any acts committed after February 20, 2014 are procedurally barred for failure to exhaust administrative remedies. However, as the court held in its Memorandum Opinion and Order on Defendant's Motion to Dismiss (Doc. # 15), Plaintiff's claims are not procedurally barred as it relates to her retaliation claim. "[I]t is settled law that 'it is unnecessary for a plaintiff to file a subsequent EEOC charge before raising in federal court a retaliation claim growing out of an earlier charge.'" *Lewis v. Eufaula City Bd. of Educ.*, 922 F.Supp.2d 1291, 1306 (M.D. Ala. 2012) (quoting *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988)) (internal brackets omitted).

U.S.C. § 2000e–3(a). The first subsection is known as the "participation" clause, and the second subsection is known as the "opposition" clause. Claims of retaliation under each clause may be evaluated using the *McDonnell Douglas* burden-shifting framework. *Jackson v. Geo Group, Inc.*, 312 F. App'x 229, 233 (11th Cir. 2009); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action by the employer simultaneously with or subsequent to such opposition or participation; and (3) a causal connection exists between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "If a plaintiff establishes a *prima facie* case of retaliation and the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011) (citing *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)).

Defendant concedes that Plaintiff engaged in statutorily-protected activity both in December 2013, when she complained to Blanton (opposition), and on February 20, 2014, when she filed her EEOC Charge (participation). However, Defendant argues that Plaintiff cannot show that she suffered an adverse employment action and that, to the extent any alleged adverse employment action occurred, she has failed to show that it is causally connected to her protected conduct. The court addresses each of those arguments, in turn.

### 1. Did Plaintiff Suffer from An Adverse Employment Action that was Causally Related to Her December 2013 Internal Complaints?

The standard for what constitutes an adverse employment action in the retaliation context differs from the standard applied in the discrimination context. *See Mills v. Cellco P'ship*, 376 F.

Supp. 3d 1228, 1244 (N.D. Ala. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "In order to constitute an adverse employment action for purposes of establishing a *prima facie* case [of retaliation], the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." *Williams v. Apalachee Ctr., Inc.*, 315 F. App'x 798, 799 (11th Cir. 2009) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57, 68). "[I]t is not limited to retaliatory actions that affect the terms and conditions of employment." *Perkins v. Kushla Water Dist.*, 21 F. Supp. 3d 1250, 1266 (S.D. Ala. 2014) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 64 (2006)). "Such a determination is inherently fact-specific and 'depend[s] upon the particular circumstances' of the case." *Allen v. S. Commc'ns Servs., Inc.*, 963 F. Supp. 2d 1242, 1251 (N.D. Ala. 2013) (citations omitted) (quotation omitted).

Due to the application of this less stringent standard in the retaliation context, the court will assume, for the sake of argument, that each one of Plaintiff's identified events (*i.e.*, changing her sick time to AWOL, issuing her letters of counseling, subjecting her to an Internal Affairs investigation into her working extra jobs, and denying her requests to work extra jobs) constitutes an actionable adverse employment action—notwithstanding Plaintiff's failure to set forth a factual basis as to each challenged action. And, with the exception of the February 6, 2014, March 20, 2014, and August 28, 2014 letters of counseling (which are too remote in time to be causally connected to Plaintiff's December 2013 internal complaints[10]), the court will assume that each adverse employment action listed above is causally connected to her December 2013 complaints

---

[10] *See Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226 (11th Cir. 2011) (holding that a two-month gap between the protected conduct and a subsequent adverse employment action is not sufficient to establish causal connection). Additionally, Plaintiff's letters of counseling issued on March 20, 2014 and August 28, 2014 (approximately three and eight months, respectively, after Plaintiff's internal complaints) are also too tenuous in time to be causally connected to Plaintiff's December 2013 internal complaints.

to Blanton. The timeline of events in the Rule 56 record is unclear as to when the challenged actions occurred, but in an effort to construe the facts in the light most favorable to Plaintiff, the court will assume that timing supports an inference of causation. But, even making these assumptions, the court concludes that Plaintiff's retaliation claim fails because Defendant has articulated legitimate, non-discriminatory reasons for its decisions, and Plaintiff has wholly failed to show that those reasons are a pretext for retaliation.

### a.   Defendant's Articulated, Non-Retaliatory Reasons for Its Actions

Defendant has articulated legitimate, non-retaliatory reasons for each action challenged by Plaintiff. First, as to Plaintiff's timecard claim (where she was temporarily marked AWOL for missing a shift in December 2013), Plaintiff testified that she missed her shift one morning because she was out for the holiday. When Howard informed her she was supposed to be at work, only then did she tell him she would not come to work because she was sick. Howard informed her that she would need to bring in a doctor's note to excuse her absence. Plaintiff complied, submitted a doctor's excuse, and her timecard was changed from AWOL to sick. Defendant's sick leave policy permits Defendant to request a doctor's excuse from employees, and once Plaintiff presented the excuse, her timecard was updated.

Next, Defendant issued Plaintiff a letter of counseling on February 6, 2014 as a result of her failure to follow procedure and "call[] in [15 minutes before her shift was to begin] when [she] found that [she] would be home sick." (Doc. # 31-1 at 81). (Note: This is a separate incident from the incident discussed immediately prior.) This failure provides a legitimate reason Defendant might issue a letter of counseling.

As to Plaintiff's challenge to Defendant's internal investigation regarding her extra job activities, Defendant was concerned that Plaintiff was working extra jobs without permission.

Plaintiff testified that her request was denied because she was under investigation for prior extra job activity. Halting her extra job activity while the investigation was ongoing is a legitimate, non-retaliatory reason. And, after the investigation concluded, Plaintiff was able to resume working an extra job at Worship Center Church without question.

### b.  Plaintiff Has Failed to Show that Defendant's Articulated Reasons are Pretext for Retaliation

"A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Husk v. City of Talladega, Ala.*, 2019 WL 2578075, at \*4 (N.D. Ala. June 24, 2019) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Plaintiff has not pointed to any Rule 56 evidence showing that the reasons given by Defendant were false and were provided to cover up retaliation. Nowhere in Plaintiff's seven-page opposition brief does she even mention the word pretext, let alone offer substantial evidence (or, for that matter, any evidence at all) that would permit a reasonable jury to infer pretext. Plaintiff has completely failed to show that Defendant's reasons for its actions are false, and that its true intent was to retaliate against her in any respect. She has failed to point out "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reasons that would allow a reasonable factfinder to deduce that those reasons are unworthy of credence. *Paschal v. United Parcel Serv.*, 573 F. App'x 823, 825 (11th Cir. 2014) (quotation omitted). Therefore, Plaintiff's has failed to show she was retaliated against for her opposition conduct.

### 2.  Did Plaintiff Suffer an Adverse Employment Action Related to Her February 20, 2014 EEOC Charge?

The only allegedly retaliatory events occurring after Plaintiff filed her EEOC Charge are

her March 20, 2014 letter of counseling and her August 28, 2014 letter of censure. These letters could likely dissuade a reasonable employee from making or filing a charge of discrimination; therefore, on this Rule 56 record, they qualify as actionable adverse employment actions in the retaliation context. But, Plaintiff must still establish the causal connection element of the *prima facie* case requirement. And, she must also rebut head on the City's reason for counseling and censuring her. She has failed in both respects.

### a. Plaintiff Has Not Shown a Causal Connection Between Her EEOC Charge and Subsequent Letters of Counseling

Plaintiff has failed to show that either letter is causally connected to her February 20th EEOC Charge. "Causation must be established according to traditional principles of but-for causation, which requires 'proof that the desire to retaliate was the but-for cause of the challenged employment action.'" *Callahan v. City of Jacksonville, Fla.*, -- F. App'x --, 2020 WL 914923, *2 (11th Cir. 2020) (quotation omitted). This presupposes that the decisionmaker had knowledge of the protected activity before making the challenged employment decision. *Id.* Plaintiff has not presented any Rule 56 evidence that the decisionmaker(s) knew Plaintiff had filed an EEOC Charge before issuing her the March 20 letter of counseling or the August 28 letter of censure. Moreover, the August 28 letter of censure is too remote in time to establish a causal connection, as approximately six months passed between the filing of her EEOC Charge and this letter of censure. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1362, 1364 (11th Cir. 2007) (holding that the plaintiff did not establish a causal connection between a complaint of sexual harassment and a termination of employment three months later where she did not present other evidence).

Because Plaintiff has failed to establish the requisite causal connection, she has failed to establish a *prima facie* case of retaliation as to either letter.

**b. Defendant Has Articulated Legitimate, Non-Retaliatory Reasons for its Conduct, and Plaintiff Has Failed to Show that Such Reasons are Pretext for Retaliation**

Even if Plaintiff could establish a causal connection between her EEOC Charge and letters of counseling and censure (and, to be sure, she has not), Defendant has articulated legitimate, non-retaliatory reasons for issuing these letters. Plaintiff failed (on two separate occasions) to pick up her radio in a timely manner when the dispatcher had called her three times. As a result, she was issued these letters, which, in any event, were not included in her disciplinary file.

As with her gender discrimination claim, Plaintiff has failed to even argue that the City's reasons are pretextual. She has presented no Rule 56 evidence suggesting that Defendant's reasons are false, and that its real motivation for issuing these letters was to retaliate against her because she filed an EEOC Charge. Consequently, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

**C. Plaintiff Has Failed to Establish a Hostile Work Environment Claim Under Title VII**

Under well-settled Eleventh Circuit precedent, "[a] hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Specifically, to establish a hostile work environment claim, a plaintiff must show:

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the

> employer is responsible for such environment under either a theory of vicarious
> or of direct liability.

*Miller*, 277 F.3d at 1275 (citation omitted). Courts are directed "to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788-89 (1998).

Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation omitted). The statute:

> does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Here, Plaintiff complains that she was subjected to a hostile work environment when McCord spoke to her in a demeaning manner and when Jackson sexually harassed her. Plaintiff belongs to a protected group and has alleged that she was subjected to unwelcome harassment. However, she has failed to show that either McCord or Jackson engaged in any behavior that was sufficiently severe or pervasive to alter the terms and conditions of her employment or to create a discriminatorily abusive working environment.

### 1.  Sergeant McCord

Plaintiff claims that McCord would speak to and interact with her in a loud and demeaning manner. (Doc. # 31-1 at 28-29, 34). She has presented no evidence of gender-based comments. Upon consideration of the Rule 56 record, the court concludes that McCord's style of communication (viewed through the lens of a reasonable person) simply did not amount to a hostile

work environment based on Plaintiff's gender.

First, the Rule 56 record indicates that McCord spoke to many inferior officers (including male officers) in a similar manner. (Doc. # 31-1 at 40-44). And, although Plaintiff complains that she was denied the ability to use the Precinct restroom on one occasion, she has failed to demonstrate how this one act constitutes severe or pervasive conduct on the basis of her sex. Generally, "discrete acts cannot alone form the basis of a hostile work environment claim." *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (emphasis omitted) (citation omitted).

Second, there is nothing in the Rule 56 record suggesting that the terms and conditions of Plaintiff's employment changed in any material way as a result of McCord's communication style. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *Mendoza v. Borden, Inc.*, 185 F.3d 1238, 1245 (11th Cir. 1999) ("[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.") (quotation omitted). Even viewing the facts in the light most favorable to Plaintiff, she has utterly failed to present sufficient Rule 56 evidence that McCord created a sexually hostile work environment with his communication style. This is not a close call.

### 2.  Lieutenant Jackson

Plaintiff claims that Jackson sexually harassed her when he rubbed her elbow on one occasion, pressed up against her back on another, and asked her personal questions regarding her children, her relationship status with the father of her children, and whether she worked out. (Doc. # 31-1 at 20-21). The court concludes that these alleged events are not so severe or pervasive as to create a hostile work environment. Again, this is not a close call.

Considering the factors listed above, the court concludes that Jackson's conduct was not

"physically threatening or humiliating." Nor did the "cumulative effect of []his conduct 'unreasonably interfere[]'" with Plaintiff's job performance. *Mendoza*, 195 F.3d at 1245. The Eleventh Circuit has held that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Mendoza*, 195 F.3d at 1245 (quoting *Faragher*, 524 U.S. at 788). The Rule 56 evidence does not support the conclusion that the alleged incidents were "extremely serious."

Plaintiff has also failed to show that Jackson's conduct was severe or pervasive. Plaintiff has been employed by Defendant since October 2002 and identified two isolated incidents occurring in September and October 2013. A reasonable jury could not conclude that these two incidents are either severe or pervasive. *See, e.g.*, *Webb-Edwards v. Orange Cty. Sheriff's Office*, 525 F.3d 1013, 1027-28 (11th Cir. 2008) (holding that a supervisor's comments that the plaintiff would "looked hot" and "should wear tighter clothing" -- which persisted at least weekly over an eight week period -- were not severe and pervasive), *cert. denied*, 555 U.S. 1100 (2008); *Dar Dar v. Associated Outdoor Club, Inc.*, 248 F. App'x 82, 85 (11th Cir. 2007) (concluding that a co-worker who touched the plaintiff on the buttocks twice and made two sexually inappropriate comments over the course of 22 months did not constitute severe behavior). Plaintiff also has failed to show that Jackson's alleged sexual harassment altered the conditions of her employment or affected her work performance in any manner. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quotation omitted). Thus, viewing the Rule 56 record in the light most favorable to Plaintiff, she has failed to present sufficient evidence creating a genuine issue of material fact on her hostile work environment claim.

Here, the court concludes that no reasonable juror could conclude that the conduct that Plaintiff claims she was subjected to is severe or pervasive. *Cf. Reeves*, 594 F.3d at 811-12 (finding

severe or pervasive sexual harassment where a coworker used the terms "whore," "bitch," and "cunt," had vulgar discussions of women's breasts, nipples, and buttocks, and posted a pornographic image of a woman in the office"); *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (finding severe or pervasive sexual harassment where the plaintiff's coworker gave the plaintiff "unwanted massages, [stood] so close to [her] that his body parts touched her from behind, and pull[ed] his pants tight to reveal the imprint of his private parts").

After careful review of the Rule 56 record, the court concludes that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

## IV.    Conclusion

For all the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 29) is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 6, 2020.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE